IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:16-CR-108 (GTS) |
| | ) | |
| v. | ) | |
| | ) | |
| **JASON KOPP,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED OFFER OF PROOF

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offenses, and a factual basis for the defendant's guilty plea. **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity any disagreement with any of the facts described in it.**

1) **Potential Maximum Penalties:** The Court can impose the following maximum penalties for the offenses to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a) **Maximum term of imprisonment:**

   Counts 1-3; 6-13:    30 years per count, pursuant to 18 U.S.C. § 2251(e).

   Counts 14-22:    20 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

   Counts 27-28:    20 years per count, pursuant to 18 U.S.C. § 2252A(b)(2).

   b) **Mandatory minimum term of imprisonment:**

   Counts 1-3; 6-13:    15 years per count, pursuant to 18 U.S.C. § 2251(e).

    Counts 14 – 22:  5 years per count, pursuant to 18 U.S.C. § 2252A(b)(1).

c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

d) **Supervised release term:**  In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment.  *See* 18 U.S.C. § 3583(k).  A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

e) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.

f) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student.  For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction.  A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

g) **Restitution:**  The Court will enter an order directing the defendant to pay restitution to any minor victims depicted in images encompassed in any counts to which the defendant is pleading guilty, pursuant to 18 U.S.C. § 2259(b).  Restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

h) **Forfeiture:** Pursuant to 18 U.S.C. § 2253 and 21 U.S.C. § 853(p), the Court may enter an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the indictment, described above, and Bill of Particulars filed in this matter, or to any substitute assets, or to a money judgment, all as more fully set out below:

    1. One Samsung Galaxy S3, model SCH-I535V, serial number 256691456907935328 (Asset ID # 16-FBI-002396);

    2. One 500 GB Seagate external hard drive, serial number 2GEX1XAM (Asset ID # 16-FBI-002396);

    3. One HP desktop, model number HPE210Y, serial number MXX0180KG9, containing a 1TB Western Digital hard drive, serial number WCAV5A980350 (Asset ID # 16-FBI-002396);

    4. One Samsung Galaxy S4, serial number RV8FB176TWE (Asset ID # 16-FBI-002399); and

    5. One Samsung Galaxy S5, IMEI number 990004954246785 (Asset ID # 16-FBI-002396).

i) **Other Adverse Consequences:**

    (1)   Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

3

(2) A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

2) **Elements of Offenses:**

**Count 1:     Conspiracy to Sexually Exploit a Child**

First:     Two or more persons conspired to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

Second:     The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

Third:     The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 2 – 3, and 6 – 13:  Sexual Exploitation of Children**

First:     The victim was less than 18 years old;

Second:     The defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, or attempted to do so; and

Third:     The visual depiction was actually transported or transmitted in or affecting interstate commerce, or that the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or that the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

**Counts 14 – 22:  Distribution of Child Pornography**

First:     The defendant knowingly distributed a visual depiction;

4

<u>Second</u>: The visual depiction was distributed or transported in interstate commerce using a means or facility of interstate or foreign commerce, or in or affecting such commerce by any means, including by computer;

<u>Third</u>: The visual depiction was child pornography; and

<u>Fourth</u>: The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct.

**Counts 27 – 28:     Possession of Child Pornography**

<u>First</u>: The defendant knowingly possessed material that contains or more visual depictions which were child pornography;

<u>Second</u>: The visual depiction had been mailed or shipped or transported using a means and facility of interstate commerce or foreign commerce, or in or affecting such commerce by any means including by computer, or was produced using materials that had been shipped or transported in and affecting such commerce by any means including by computer;

<u>Third</u>: The defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct; and

<u>Fourth</u>: An image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age.

3) **<u>Factual Basis for Guilty Plea:</u>**

Beginning in or about 2014 Jason Kopp and Emily Oberst entered into an agreement and understanding with one another relating to the sexual exploitation of V-1, a minor child born in 2014. As a part of their conspiracy, Oberst agreed to use the child in order to produce sexually explicit images of V-1 and distribute those images to Kopp. She also agreed to allow Kopp access to V-1 for the purpose of using the infant for sexually explicit conduct, and for producing images of that conduct, both alone and together with Oberst. (This conspiracy is charged in **Count 1**).

As set forth more particularly below, both Oberst and Kopp actually engaged in the agreed-upon exploitation of V-1, producing images and videos depicting the lascivious exhibition of the infant's genitals, as well as images and videos depicting mouth to vagina contact, mouth to penis contact, and penis to vagina contact with the infant. The images and videos of V-1 were produced using Samsung Galaxy cellular telephones, each of which was manufactured outside the State of New York, and thus transported in interstate and foreign commerce. Further, images and videos of V-1 produced as a part of the conspiracy were also distributed between Oberst and Kopp, as well as with others, including via an online messaging application[1] and email, and as such were actually transported using a means and facility of interstate and foreign commerce, and in and affecting such commerce.

On or about November 28, 2014, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict his penis pressed against the vagina of V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 6**).

On or about February 19, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced images that depict penis to mouth contact with V-1. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 7**).

On or about April 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and, using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the

---

[1] The on-line messaging application used allows for text messaging, and the transmission of images and video files by way of wireless internet and/or a cellular network.

lascivious exhibition of V-1's vagina, penis to vagina contact with V-1, and penis to mouth contact with V-1.  (The exploitation of V-1 for the purpose of producing these images is charged in **Count 8**).

On or about June 20, 2015, Jason Kopp engaged in sexually explicit conduct with V-1 for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-1's genitals, penis to vagina contact with V-1, and penis to mouth contact with V-1.   (The exploitation of V-1 for the purpose of producing these images is charged in **Count 9**).

On or about May 12, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, a male child born in 2013, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, hand to penis to contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 10**).

On or about November 8, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced image and video files depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals, penis to penis contact with V-3, and a depiction of V-3 naked, straddling Kopp's penis.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 11**).

On or about December 26, 2015, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 12**).

On or about January 30, 2016, Jason Kopp engaged in sexually explicit conduct with V-3, for the purpose of producing visual depictions of that conduct, and using his Samsung cellular telephone, produced images depicting that sexually explicit conduct, including the lewd and lascivious exhibition of V-3's genitals.  (The exploitation of V-3 for the purpose of producing these images is charged in **Count 13**).

On or about June 15, 2015 Kopp distributed to Emily Oberst, via messaging application, a means and facility of interstate and foreign commerce, a video file depicting the lewd and lascivious exhibition of V-3's genitals. (This distribution is charged in **Count 14**).

On or about August 24, 2015 Kopp distributed to Emily Oberst, via messaging application, video files depicting the lewd and lascivious exhibition of V-3's genitals.  (This distribution is charged in **Count 15**).

On or about February 10, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address jxxxxxxxx0@yandex.com. The email sent by Kopp contained three attached image files, all depicting the lewd and lascivious exhibition of V-3's genitals.   By return email, user jxxxxxxxx0@yandex.com acknowledged receipt of the images of V-3.  (This distribution is charged in **Count 16**).

On or about February 15, 2016, Kopp sent an email via the internet, a means and facility of interstate and foreign commerce, to another user at email address Kxxxxxxx.xxxxxx@yandex.com. The email sent by Kopp contained seven attached image files. Three of the image files depict the lewd and lascivious exhibition of V-3's genitals, three depict the lewd and lascivious exhibition of V-1's genitals, and one depicts V-1's face. By return email, user Kxxxxxxx.xxxxxx@yandex.com acknowledged receipt of the images. (This distribution is charged in **Count 17**).

On or about March 4, 2016 Kopp distributed to an undercover law enforcement officer, via messaging application, image files depicting the lewd and lascivious exhibition of V-1's genitals. (This distribution is charged in **Count 18**).

On or about March 5, 2016, Jason Kopp counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him. When Kopp asked for images of V-1, Oberst knew he meant sexually explicit images, and that is in fact what Kopp intended.[2]  At Kopp's request, sometime between March 5

---

[2]   Kopp objects to this sentence, and instead admits: "When Kopp asked for images of V-1, he meant sexually explicit images."

To prove that Kopp "counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him," for the crimes charged in both Counts 1 and 2, the Government's evidence includes his videotaped statements to law enforcement, including the following statements, transcribed below. (Kopp does not admit these recorded statements for purposes of his guilty plea).

| | |
|---|---|
| **SA Skelton** | When you… You said you asked Emily for pictures… |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | What did you ask her… what kind of pictures? |
| **Jason Kopp** | I just said can you send me pictures of [V-1], and she knows, you know, what, to send nude pictures. |
| **SA Skelton** | OK, how, and so, how did, did she just know that's what you mean? I mean, Im a little confused about that. |

and March 6, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 6, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 2**).

After receiving the explicit images of V-1 on March 6, 2016, Kopp re-distributed one of the sexually explicit images back to Oberst via messaging application, with a comment on what

---

| | |
|---|---|
| **Jason Kopp** | Well yeah, she knows, I mean, she, she's sent them before in the past and when so when I so when I was like, hey, can I have pictures of [V-1], or I wouldn't say [V-1], I was like, can I have pictures of [redacted]? |
| **SA Skelton** | Ok. |
| **Jason Kopp** | And she would just send them. |
| **Inv. Costello** | But how, can I, how does it get to those pictures as opposed to if I asked you hey could you send me pictures, I might get… |
| **Jason Kopp** | Well because that's what she knows when I ask, she knows that's what I meant when… |

\*     \*     \*

| | |
|---|---|
| **SA Skelton** | You said before that if you texted Emily and said you know, can I have some pictures she knew what that meant. |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | So tell me about how the sort of picture taking thing got started. |
| **Jason Kopp** | What do you mean? |
| **SA Skelton** | So it sounds like, you told me about how the, the contact with [V-1] started, [unintelligible]. |
| **Jason Kopp** | Well I mean, she knew, um, when the contact, she knew what I liked, and I'd, in the past I'd ask her hey can you send me pictures of this, this, and this, and she'd do it |
| **SA Skelton** | OK. |
| **Jason Kopp** | So now its just like hey can you send me some pictures. |
| **SA Skelton** | Ok, so when you, when it first started you'd say pictures of this, this, and this. |
| **Jason Kopp** | Mmhmm. |
| **SA Skelton** | What's is [unintelligible]. |
| **Jason Kopp** | Well, can, can you, you know, send me pictures of her private parts spread open or, you know, pretty much that's all you can do so, that, or pictures of her butt and stuff like that. |

he liked about the image.[3]  (This distribution is charged as **Count 19**).  On March 7, 2016, Kopp distributed one of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging application.  (This distribution is charged as **Count 20**).

On or about March 15, 2016, Jason Kopp again counseled, commanded, induced, or procured the sexual exploitation of V-1 by texting Emily Oberst and asking her to produce images of V-1 and send them to him.  At Kopp's request, sometime between March 15 and March 16, 2016, Oberst used V-1 for the purpose of producing sexually explicit images depicting the lewd and lascivious exhibition of the infant's vagina, actually produced such images, and on March 16, 2016, distributed the produced images to Kopp via messaging application. (The exploitation of V-1 for the purpose of producing these images is charged in **Count 3**).  On March 17, 2016, Kopp distributed two of these sexually explicit images of V-1, produced at his request by Oberst, to an undercover law enforcement officer through messaging.  (This distribution is charged as **Count 21**).

On March 18, 2016, Kopp distributed eleven sexually explicit images of V-1 to the undercover law enforcement officer through messaging application.  These images depict the lewd and lascivious exhibition of V-1's vagina, and a depiction of the infant naked, straddling Kopp's penis. (This distribution is charged as **Count 22**).

---

[3]  Kopp does not admit the statement "with a comment on what he liked about the image."

To prove that he knowingly distributed child pornography to Emily Oberst on this occasion, the Government's evidence includes a text message sent from Kopp to Oberst in which he re-distributed two images of V-1 back to Oberst, one that depicted the child's buttocks, and one that depicted the lewd and lascivious exhibition of her vagina, accompanied by the following text: "I love these two pics the first one is because her pussy sticks out in the second one because she has a nice little asshole."  Kopp does not admit the content of the text portion of the transmission for purposes of his guilty plea.

On March 18, 2016, Jason Kopp knowingly possessed the following items of electronic media that contained image and video files of child pornography known to be a series widely traded on the Internet, and obtained by him from the Internet:

On a 500GB Seagate external hard drive, serial #2GEX1XAM (Product of China), Kopp possessed 793 images of child pornography, exclusive of the images of the victims charged in the Counts 1 – 26 of the Indictment. Two of the files contained on this material are described as follows:

    1.    An image file with a name that contains a long string of letters and numbers, and depicts a female child approximately 2 – 3 years old with an adult penis in her mouth.

    2.    A video file named "8 year old duct taped and raped24.(1).wmv," which depicts a female child whose age appears consistent with the age stated in title of the file. The child's wrists and ankles are bound together with duct tape, while an adult male has sexual intercourse with her.[4]

(The possession of this material is charged in **Count 27**).

On an HP desktop, model #HPE210Y, serial #MXX0180KGP, containing a 1TB Western Digital hard drive s/n WCAV5A980350 (made in Thailand), Kopp possessed 78 images and 125 videos of child pornography, exclusive of images and videos of the victims charged in Counts 1 – 26 of the Indictment. Two of the files contained on this material are described as follows:

    1.    untitled37.bmp, an image file depicting an adult's penis pressed against the bare vagina of an infant/toddler with semen on the child's vagina.[5]

---

[4] For purposes of his guilty plea, Kopp does not admit this description of the video file, but instead admits that it "depicts a female child whose age appears consistent with the age stated in title of the file and the adult male has sexual intercourse with her."

[5] For purposes of his guilty plea, Kopp does not admit this description of this image file, but instead admits that it depicts "an adult's penis pressed against the vagina of a minor under the age of 12."

2.	untitled24.bmp, an image file depicting a female child who appears to be 4 or 5 years old holding an adult penis with her hands, and putting it in her mouth.

(The possession of this material is charged in **Count 28**).

3)	**Non-prosecution for other offenses:** The Government will not seek other federal criminal charges against the defendant based on conduct described in the indictment in Case No 5:16-CR-108 (GTS), in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," and/or any other child exploitation crimes that are specifically known to the Government before the date on which the defendant enters his plea of guilty, but only for so long as the defendant's guilty plea and sentence to the 22 counts of this indictment remain in effect.

Respectfully submitted,

RICHARD S. HARTUNIAN
United States Attorney

*/s/ Lisa M. Fletcher*　　　　　　　　　　　　　　5/19/2016
Lisa M. Fletcher　　　　　　　　　　　　　　　　　Date
Assistant United States Attorney
Bar Roll No. 510187