IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

************************************
UNITED STATES OF AMERICA

v.

JASON KOPP

                     Defendant.
************************************

Case No. 5:15-CR-108 (GTS)

GOVERNMENT'S RESPONSE TO
DEFENDANT'S SENTENCING
MEMORANDUM

On August 24, 2016, pursuant to the Uniform Presentence Order issued by the Court, the United States filed a sentencing memorandum in the above-captioned matter. The Sentencing Memorandum of the United States addressed the Presentence Investigation Report (PSR) only, as we had not yet received the defendant's sentencing submissions. That same day, the defendant filed a sentencing memorandum, and this response is filed in answer to the arguments raised therein.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

**1.    The Guidelines Sentence is Correctly Scored.**

Based upon a flawed reading of U.S.S.G. § 5G1.2, the defendant maintains that where, as here, no count of conviction carries a maximum penalty of life (the sentence called for by the defendant's Guidelines score), the Guidelines sentence should be the number of years resulting from some generalized calculation of his *life expectancy*, apparently regardless of whether the Court deems a life sentence to be appropriate. Defendant's Sentencing Memorandum, pp. 9 – 10. Specifically, the defendant argues that in his case, "in order to impose a guideline sentence, the Court would impose consecutive sentences amounting to 41.2 years." *Id*. at 10. This theory lacks both legal merit and common sense.

First, as to common sense, a Guidelines sentence of life is not a gamble; it is not designed to allow liberty to defendants who are able to outlive some actuarial estimate of how long they will live. Instead, when a Court determines that a Guidelines sentence of life is the total punishment that should be imposed, the sentence should be a term of years that ensures that result. U.S.S.G. § 5G1.2(d). Whether that term is 100 years, or 550 years, the intended result is accomplished – the defendant will never again be at liberty. With the proposed sentence of 41.2 years, the defendant would be eligible for approximately 6 years of good time credit, and as such eligible for release in approximately 35.2 years, or when he is 75. In this way, there is every likelihood that he would avoid an intended life sentence, a fact he cannot dispute given that he maintains his life expectancy is 82. *Id.* There is no reading of the law that would require such an absurd result. Thus, in a case like this one, where there are multiple counts of conviction, each of which can bear a consecutive sentence, the sentencing court can, and should, best ensure the defendant will serve a full life sentence by stacking the statutory maximum sentences for each count rather than by employing some artificial limitation on the total term of imprisonment that will not guarantee the intended result.

More fundamentally, however, the defendant's theory has no legal merit, and not surprisingly, Kopp offers no legal support for his proposed approach. Indeed, the Court of Appeals rejected a similar contention in *United States v. Hamilton*, 548 F. App'x 728 (2d Cir. 2013) (summary order). Hamilton was convicted of five counts of production of child pornography, each of which carried a statutory maximum thirty-year term of imprisonment; one count of receipt of child pornography, which has a twenty-year statutory maximum; and one count of possession of child pornography, which has a ten-year statutory maximum. The district court

2

imposed consecutive maximum terms on the five production counts and concurrent maximum terms on the receipt and possession counts, for a combined 1,800-month (150-year) term of imprisonment to achieve the guidelines sentence of life. *Id*. at 729.

On appeal, Hamilton argued "that a cumulative sentence of 1,800 months is substantively unreasonable because given his age and life expectancy, the sentence amounts to 'multiple life sentences.'" The Court disagreed. "But of course, no prisoner can serve more than a life sentence. Any sentence that extends beyond Hamilton's maximum conceivable life expectancy has no practical effect on him. Thus, the sentence imposed on Hamilton (like any sentence a third its length) is simply equivalent to a life sentence." *Id*. at 730.

Similarly, other federal appellate courts have equated a guidelines sentence of life imprisonment with a term of years consisting of consecutive maximum terms of imprisonment on each count of conviction, even when the resulting total term of years well exceeds a defendant's life expectancy. *See, e.g., United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008) (rejecting challenge to imposition of sixty-year term of imprisonment consisting of consecutive twenty-year maximum statutory terms of imprisonment on three counts of conviction when the guidelines sentence was life); *United States v. Thompson*, 523 F.3d 806, 809, 814 (7th Cir. 2008) (upholding a 190-year term of imprisonment resulting from stacking the maximum statutory terms of imprisonment for multiple counts of conviction to best achieve a guidelines sentence of life); *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) (upholding a 110-year term of imprisonment consisting of the stacking of the maximum statutory terms on 16 counts of mail and wire fraud, arson, and using fire to commit a felony when guidelines sentence was life); *United States v. Lott*, 310 F.3d 1231, 1244 (10th Cir. 2002) (explaining that a 125-year sentence resulting

from stacking of multiple drug convictions under U.S.S.G. § 5G1.2(d) was "the effective equivalent of a life sentence").

**2.     A Life Sentence is Not Excessive nor "Greater than Necessary"**

The Government has no quarrel with the defendant's argument that life sentences should be "reserved for the most culpable behavior." Defendant's Sentencing Memorandum, p. 11, quoting *United States v. Newsom*, 402 F.3d 780, 785 – 86 (7th Cir. 2005). Where we disagree is with the definition of "the most culpable behavior." Where the defendant would limit life sentences to murder, *id*., neither Congress, nor the Courts, have imposed such a limitation. *See United States v. Metzger*, 411 Fed. App'x 1, (7th Cir. 2010) (upholding a 235 year sentence for a 54 year old defendant convicted of producing child pornography of 7 victims, and possessing one million images of internet child pornography and erotica, specifically rejecting the argument that "his sentence is substantively unreasonable because it leaves no room for a higher penalty to deter worse offenders," the very same argument proffered here by Kopp). Moreover, if life sentences were intended to be as limited as the defendant suggests, there would be no reason for the Guidelines provide for and recommend such a sentence in any other case.

In fact, there are many non-homicide statutes that allow for life sentences, and some that *require* it for repeat offenders. *See, e.g*. 18 U.S.C. § 2241(c) (mandatory minimum 30 year, and maximum life sentence for crossing a state line with the intent to engage in a sexual act with a child under 12, regardless of whether the abuse actually occurs; with *mandatory life* for a second offense); 18 U.S.C. § 2423(a) (mandatory minimum 10 year, and maximum life sentence for transporting a minor under 18 across a state line with the intent that the child engage in unlawful sexual activity, regardless of whether the activity actually occurs); *United States v. Jansen*, 431

4

Fed. App'x 51 (2d Cir. 2011) (upholding life sentence imposed by Judge Hurd on a 26 year old woman with no criminal history convicted of one count of conspiracy to violate 18 U.S.C. § 2423(a), and two counts of aiding and abetting another to violate18 U.S.C. § 2241(c)); and 18 U.S.C. § 3559(e) (*mandatory life* sentence for second offense against a child). Of course, potential and mandatory life sentences are not limited to child exploitation offenses. *See, e.g.* 21 U.S.C. § 841(b)(1)(A) (mandatory minimum 10 years, and maximum life sentence for first time drug offender responsible for a particular quantity of drugs; and *mandatory life* sentence for third drug offense.); 18 U.S.C. § 1201 (any term of years, *up to life*, for kidnapping).

Moreover, while the defendant argues that life imprisonment is so severe a sentence that it should be reserved for murder cases, life is not the greatest sentence available for all cases where a victim is killed; first degree murder and a number of other federal crimes where death results (including, for example, kidnapping and carjacking) carry the death penalty. *See* 18 U.S.C. § 3591.

The inquiry here is whether Jason Kopp's crimes are the type of "culpable behavior" that merits life imprisonment. In our Sentencing Memorandum the Government answered that question in the affirmative, outlining the long list of heinous offenses Kopp has committed against children, unchecked, over the course of 16 years. What could be more deserving of a life sentence; who could be more culpable? That he used children at will for his own sexual gratification with no concern for their well-being, leaving them to live with the scars of their abuse as he moved on to his next victim, makes Jason Kopp one of the most culpable offenders to stand before this Court. To argue otherwise ignores the nature and severity of the crimes Kopp committed, and turns a blind eye to the pain and life-long horrors he has left in his wake.

### 3.     There is Nothing in the Defendant's Background That Explains, or Mitigates, His Offenses

Like many sex offenders facing federal criminal sentencing, in an effort to explain his actions Jason Kopp has made a post-arrest disclosure of childhood sexual abuse at the hand of an unnamed peer.   There is no evidence of this abuse, and the telling of the event has morphed over time, yet the Court is asked to accept the allegation as fact, and consider it as an explanation or reason for his conduct, and apparently in mitigation thereof.

In a recorded statement the night he was arrested, and after he was told he was being charged with federal offenses, Kopp recounted to a New York State Police Investigator a singular incident with "a buddy" when they were "15, 16, or 17," where the defendant wanted to play G.I. Joes, but was told he couldn't, "until I did whatever."   Following that statement, the defendant immediately offered: "I'm not going to blame him for this" (the crimes for which he was being arrested), and specifically stated: "He didn't force me either. . . and it's not his fault I'm sitting here today.   I just should have been a better person."

In contrast, the defendant today alleges years-long abuse by an older peer beginning when he was 10 years old, and now points to this abuse as a factor contributing to his offenses. Defendant's Sentencing Memorandum, pp. 2 - 3.   The Government submits that the Court should view the unverified, and evolving, disclosure with skepticism, for over-disclosure of childhood abuse is not uncommon with offenders facing criminal prosecution.   In a study first conducted in 1988, more than two-thirds of non-polygraphed offenders claimed to have been sexually abused as a child, but when subjected to polygraph verification, "that number dropped to 29 percent— far more in keeping with studies of the prevalence of sexual abuse in the community generally." Hindman, J. and Peters, J., *Polygraph Testing Leads to Better Understanding Adult and Juvenile*

6

*Sex Offenders*, Federal Probation, Volume 65, Number 3, (2001), at 10.[1] Similar results were reported when the study was repeated both in 1994 and again in 1999. *Id*. at 11, 12. Not insignificantly, the reported number of victims also increased precipitously when the offenders were subjected to polygraph verification. *Id*. at 10 – 12. *See also* Hall, R.C.W.*, A Profile of Pedophilia: Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues* in Mayo Clinic Proceedings 82(4) (2007) at 464 ("There is also legitimate concern regarding the validity of many of the self-reports of pedophiles who claim to have been abused as children themselves. These statements are often made in a legal or group treatment setting, in which pedophiles may be trying to mitigate their sentence or gain sympathy for their behavior.")

While counsel suggests that the defendant's stepfather's acts of spanking, pushing, and hitting, amount to childhood abuse that also led to and explains the defendant's many offenses against multiple child victims, Defendant's Sentencing Memorandum, pp. 2 – 3, nothing about this, even if true, (Kopp's mother reports that "[s]he does not believe the defendant was abused as a child, physically or otherwise." PSR ¶ 208) merits a sentencing departure. *United States v. Vela*, 927 F.2d 197, 199 (5th Cir. 1991) ("Childhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition. 'We simply cannot agree, therefore, that these are the kinds of considerations which warrant substantial reductions in guidelines sentences.'") quoting *United States v. Daly*, 883 F.2d 313, 319 (4th Cir. 1989)(internal citation omitted); *see also United States v. Reinoso*, 350 F.3d 51, 58 (2d Cir. 2003) (Circuit law

---

[1] This article is available from many internet sites, including: https://ccoso.org/sites/default/files/import/Polygraph-and-Better-Understanding-of-Sex-Offenders--Hindman-and-Peters.pdf, last visited August 31, 2016.

"explicitly limits the situations in which a departure based on abuse is warranted to those in which the abuse creates to a mental condition that in turn leads to or causes the criminal conduct.")

In an apparent attempt to link his self-reported and evolving history of sexual and physical abuse to his offense, the defendant offers a 6-paragraph letter from Thomas Lazzaro, Ph.D. The letter does not represent the type of fully-reported psychological evaluation normally submitted in criminal cases, and the Government submits it is of no value whatsoever. There is no description of what information was provided to or considered by the examiner, but for the scores of a few administered tests. The examiner then accepts without qualification the defendant's unverified post-arrest report of childhood sexual abuse, and summarily concludes that Kopp's "emotional issues played a significant role in his crimes as a means of coping with his depression." Lazzaro Letter, pp. 1 - 2. There is *no* information about what period of time the examiner considered in his evaluation, which of Kopp's many crimes he believes resulted from this depression, which of Kopp's many victims he was made aware of, or whether he reviewed the many disturbing text messages between Kopp and Oberst, or between Kopp and the undercover, or the email correspondence in which he traded images of V-1 and V-3. The examiner certainly did not view any of the images or videos depicting Kopp's sexual abuse of children, toddlers, and infants, which are in the custody and control of the FBI. There is also no evidence that the examiner fully explored all of the diagnoses applicable to Kopp. For example, there is no explanation why Pedophilic Disorder was not listed as a possible contributing factor, much less any explanation of whether it was ever considered or explored, despite the fact that, even to a lay person, Kopp meets all of the diagnostic criteria:

    A.    Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent

child or children (generally age 13 years or younger).

B.    The individual has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.

C.    The individual is at least age 16 years and at least 5 years older than the child or children in Criterion A.

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (DSM-V) (2013), Diagnostic Criteria 302.2.

"If [a] psychologist's report cannot be squared with the court's own judgment of the defendant's culpability and the danger he poses to society, the court is free, in its discretion, to decline to rely on the psychologist's findings, so long as the court explains its basis for doing so. *United States v. DeSilva*, 613 F.3d 352 (2d Cir. 2010); *United States v. Cossey*, 476 Fed. App'x. 931, 933 (2d Cir.), *cert. denied* 133 S. Ct. 335 (2012).   Such is most clearly the case here. For even if the conclusion is correct – that for 16 years Kopp's depression caused him to engage in the sexual exploitation of multiple children, increasingly younger in age, with increasing severity in the type of abuse employed, this is an "emotional issue" that hardly mitigates his heinous crimes, or ameliorates his danger to society in general, and to extremely young children in particular.

Finally, while the defense also argues that Kopp's remorse weighs in favor of a non-Guidelines sentence, that remorse is too little, and 16 years too late.   It is not insignificant that Kopp's remorse, for a very long history of abusing multiple children, comes only after his arrest for some of the most shocking of his many crimes, and while facing a life sentence.   It is not a leap to know that Jason Kopp would still be abusing children today were it not for the good work of the FBI.

**CONCLUSION**

The Government maintains that the defendant has raised no meaningful fact or reason to depart or vary from the sentence recommended by the Guidelines. Every one of the reasons raised by the defendant in favor of a minimum sentence (including those not specifically addressed herein) falls far short of mitigation for his horrific crimes. Accordingly, for the reasons outlined above, and as set forth in our original sentencing memorandum, the Government maintains that a Guidelines sentence of 550 years is fair, just, and warranted.

Respectfully submitted this 31st day of August, 2016

RICHARD S. HARTUNIAN
United States Attorney

*/s/ Lisa M. Fletcher*
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,                    Criminal Action No.
                                             5:16-CR-108 (GTS)
        v.

JASON KOPP,

        Defendant.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2016, I electronically filed the GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM with the Clerk of the District Court using the CM/ECF system.

Randi Juda Bianco, Esq.

/s/
Paula Briggs

11