# GOVERNMENT

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

### *AFFIDAVIT OF RANDI JUDA BIANCO, ESQ.*

State of New York    )
County of Onondaga  ) ss:
City of Syracuse      )

I, Randi Juda Bianco, Esq., having been duly sworn, do hereby state and depose as follows:

1.      I am an attorney at law and was admitted to practice law in the State of New York in January 1989.    From 1988 to 1994 I worked as an attorney with Hiscock Legal Aid, representing criminally charged defendants.    In 1994, I went into private practice, representing criminal defendants in state and federal courts, including state and federal criminal appellate work. In 2012, I joined the Federal Public Defender's Office in the Northern District of New York, and in 2016 I became the supervisor of the FPD's trial unit.    Through my years of practice, I have handled thousands of criminal cases in state and federal courts, including eight capital cases.    I have tried to verdict numerous criminal cases in state and federal courts.

2.      On March 19, 2016, the Honorable Andrew T. Baxter, appointed the Federal Public Defender's Office to represent Jason Kopp on federal criminal charges filed under criminal complaint 5:16-MJ-113 (ATB).    On March 21, 2016 I was assigned by Lisa Peebles, the Federal Public Defender, to Mr. Kopp's case.

3.      I have reviewed Mr. Kopp's "Motion to Vacate, Set Aside, or Correct Sentence in Violation of the Constitutions, Laws, and Treaties of the United States Pursuant to 28 U.S.C. § 2255," filed on March 7, 2019, alleging, among other things, that I provided him ineffective

1

assistance of counsel.  I provide this Affidavit, with the Court's permission and pursuant to the Court's Order dated April 4, 2019, in response to Mr. Kopp's allegation of ineffective assistance of counsel.

4.      On March 21, 2016, the day I was assigned to Mr. Kopp's case, I received an email from the Government asking whether Mr. Kopp would be waiving his preliminary hearing.  I responded that I planned to see Mr. Kopp the following day, and would let the prosecutor know his decision then. When I spoke with Mr. Kopp about waiving the preliminary hearing, he was concerned that there seemed to be restrictions on his ability to make phone calls.   He told me that he would be willing to waive the preliminary hearing if the phone restrictions were lifted.   I contacted the Government and related Mr. Kopp's concerns, that he would waive the preliminary hearing if the phone restrictions were lifted.   After several email exchanges, the FBI confirmed that there were no restrictions on Mr. Kopp's phone use, and as a result, the preliminary hearing was waived, as Mr. Kopp had agreed.

5.      My representation of Mr. Kopp included an investigation of the charges filed against him, a review of the Government's discovery, an evaluation of whether any pre-trial motions should be filed, and an evaluation of any defenses Mr. Kopp may have had to the charges. I also engaged a psychologist, who provided an evaluation of Mr. Kopp, ultimately referenced in my sentencing submission.   My representation of Mr. Kopp included fourteen in-person visits by myself, one of my investigators, or both, and FPD Lisa Peebles attended at least three of these meetings with me.   We are required to keep specific records of the amount of time we spend on each case.  We spent over 157.34 hours working on Mr. Kopp's case.

6.      I reviewed the Government's evidence which included text messages exchanged

2

between Mr. Kopp and co-defendant Emily Oberst, the images and videos that were produced, distributed, and possessed, the forensic analysis results, and the contents of his videotaped confession, as well as the federal search warrant issued in the case.  I provided Mr. Kopp with all of the discovery in the case with the exception of the child pornography that we are not allowed to possess.  FPD Lisa Peebles and I then visited Mr. Kopp, and reviewed that evidence with him. He did not want to talk about it, but we insisted.

7.    I discussed the Government's evidence with Mr. Kopp, and advised him that there did not appear to be any viable defenses to the charges, and no viable suppression issues, specifically relating to the statement he gave to police, and the search warrant that was executed in the case.  I also advised Mr. Kopp of his Constitutional right a trial, and actually suggested that he take his case to trial, because I thought he was going to get a life sentence regardless of whether he was convicted by plea or trial, and therefore there was no down-side to going to trial.   However, Mr. Kopp was adamant about not wanting to a trial because he was embarrassed about the nature of the charges.   He was always concerned about who would be in the courtroom hearing about the charges, and was concerned about the press reporting on the nature of the charges.  He did not even want to appear at his plea, and asked if I could take the plea for him.  I told him that could not be done.

8.    I specifically explained the Guidelines, and the statutory minimum and maximum sentences to Mr. Kopp, including the probability of consecutive sentences.  Every time we spoke about sentencing I told Mr. Kopp that it was my opinion he would get a life sentence, and that while I would ask the court for the mandatory minimum, I did not think it would happen.  FPD Lisa Peebles bluntly told Mr. Kopp that he was going to get a life sentence, and he should give

thought to where he would want to do his time.   We suggested that he consider requesting designation Arizona, as it would be safer for him as there is unit where the sex offenders are housed together.

9.      On May 2, 2016, we appeared in court with the intention that Mr. Kopp was to plead guilty to the Indictment.   There was no plea agreement in the case because one would offer no benefit to Mr. Kopp.   The plea did not go through that day because I objected to certain factual allegations in the original Offer of Proof submitted by the Government, as I believed they were not necessary in order for the Court to accept the defendant's plea.   Mr. Kopp had no opinion about the facts in the Offer of Proof, and had no objection to my position that they be amended before accepting the plea.   At no time was this discussion about the Offer of Proof related to any specific sentence. The case was then adjourned for further consideration of the factual allegations in the Offer of Proof.

10.      During this time, I suggested to Mr. Kopp that if the Offer of Proof was not amended, he should proceed to trial and simply remain silent so we could then pursue an appeal on the sentence.   Thereafter, the Government provided us with an Amended Offer of Proof, and indicated that if the amendments were not acceptable, they would be superseding the indictment to add additional charges before trial.   On May 19, 2016, I related this information to Mr. Kopp by telephone.   He told me again that he did not want a trial, did not want the Government to add additional charges, and wanted to plead guilty.

11.      On May 20, 2016, I spoke with Mr. Kopp in the booth at the Marshall's Office, to be sure he wanted to proceed with the plea, which was scheduled for that day.   He said he wanted to proceed.   At no time this day, or ever, did I represent to Mr. Kopp that he would receive any

4

specific sentence, much less one of 15 years.   Even while preparing the sentencing memorandum

in this matter, I told Mr. Kopp that while we would advocate for a 15 year sentence, I did not think

that the court would give him that sentence.   I told him that while it never hurts to ask for a lesser

sentence, my experience with similar cases led me to believe that he would a life sentence under

the circumstances of his case.

_____

Randi Juda Bianco, Esq.

Subscribed and sworn to before
me this  11th   day of April, 2019
at Syracuse, New York

_____

Notary Public

DEANNA LIEBERMAN
Notary Public, State of New York
No. 01LI6105102
Qualified in WAYNE County
Commission Expires FEBRUARY 2, 2020

5